## Case No. 7,888.

KNIGHT v. STONE.

[Oliver's Forms (Ed. 1842) 489.]

District Court, D. Massachusetts. Jan., 1826.

COLLISION—ATTEMPT TO PASS — MUTUAL FAULT—LIBELANT'S FREEDOM FROM FAULT.

[In the case of a libel brought by the owner of goods lost on board of a schooner sunk in collision with a brig against the owner of the brig, it appeared that the two vessels left the same port at nearly the same time, the schooner slightly ahead. In an attempt by the brig to pass the schooner the collision occurred. From the evidence it seemed impossible to clearly fix the blame, but the probabilities point to the schooner being in fault, or at least, in case of mutual fault, then that the schooner was the most to blame. *Held*, that the libelant, to maintain his case, must stand acquitted of blame or culpable negligence on his part; and as, in this case, he does not show himself so acquitted, the libel is dismissed.]

[This was a libel by Amos Knight against Isaac Stone and trustee to recover damages for goods lost by a collision between the schooner Lydia and the brigantine Sewell.]

Andrew Dunlap, for libellant.

J. C. Merrill, for Stone.

DAVIS; District Judge. The libellant was owner of merchandise, to the alleged amount of $1131.83, shipped on board the schooner Lydia, Alexander Livingston, master, which, on the fifth of February last, by collision with the brigantine Sewell, of which the respondent was owner and master, was sunk and lost, with all the property on board. This unfortunate occurrence happened a few hours after those vessels had sailed from Newburyport. The case has been fully and ably argued by the learned counsel on both sides, and, having considered the evidence and arguments and the law applicable to the subject, I am now to declare the result. The libellant contends that the master of the Sewell was wholly to blame, and on that ground ought to answer in damages for the loss which his client has sustained; or, if the loss was accidental, or by mutual fault or negligence, that it should be apportioned between the parties. For the respondent, it is contended that there was no fault on his part, and that in case of collision by accident or mutual fault each party is, by law, to sustain his own loss.

In considering the evidence in this case, the occurrence cannot, it appears to me, be referred to accident. It was in the day time; both vessels had just before departed from Newburyport, bound on the same course, in a direction for the south channel, with a free wind. The Sewell, which departed later than the schooner, being a faster sailer, overtook her, and, in passing, by some strange inadvertence, negligence, or unskilfulness in one or both the vessels came in contact, and the schooner was so injured, as to sink in a few hours, after the crew had made their escape by getting on board the Sewell. The circumstances of the case do not require an expression of opinion of what would be the result in cases of mere accident. It is not possible, it appears to me, to view this case without considering one or other of the parties, or both of them, in fault. Such is the opinion expressed by the intelligent nautical men who have been called to testify on the subject. The libellant has failed in maintaining his position that the whole fault was on the part of Captain Stone. He was passing to leeward, as he ought to have done, by maritime usage in such cases, and at a distance not at all endangering either vessel, if there had been common precaution and care on board the schooner. It is difficult to account satisfactorily for the occurrence. It would seem that it could not have happened, unless one or the other vessel altered her course, and in such a direction as to lead to an approach. Especially, it is difficult to conceive, how it could have happened, if the Sewell bore away, and the schooner luffed. There must, it is apparent, have been an omission or blunder in regard to these operations, and from the evidence I think I am bound to presume this to have been on board the schooner, rather than on board the brig. In the brig the captain himself was at the helm, and the crew were at their proper stations for any necessary manoeuvre. On board of the schooner there was no officer on deck, and it appears doubtful whether, at the time of the collision there was any person on deck except Henry, who was at the helm. It is said, indeed, by Chapman, the mate, that when he went below he left Henry and Bolman on deck, the latter being ordered to take the place of Watts at the pump, who was drunk, and had gone below. But Bolman testifies that he was below in the cabin when he heard Henry, who was at the helm, sing out "Keep her away." The schooner being left in this situation, it is impossible for me to say that the unfortunate contact which ensued was from fault or negligence on the part of Captain Stone. And it is a circumstance not to be disregarded that under all the excitement of the occasion the blame was not at the time imputed to Captain Stone by any of the officers or crew of the Lydia who were taken on board the Sewell; nor was it thus imputed to him at any time afterwards, until the return of the parties to Newburyport. Captain Stone must, therefore, I think, be acquitted of the charge of being wholly blameable in this unhappy incident; and if the fault were mutual, it is not necessary, in my opinion, for the court to estimate the proportion, and to assess the damages accordingly. The libellant, to maintain his case, must stand acquitted of blame or culpable negligence on his part. There is, I know, a diversity of opinion on this subject, and the whole doctrine respecting collision may be considered as in a manner unsettled, from the different and opposing decisions in corresponding cases in different countries.

Bynkershoek, in his Questiones Juris Privati, distinctly considers the question,—"De damno navium, uniusque, utriusque culpa dato." The courts in Holland, in a case mentioned by the author, had decided that, if both were in fault, the damage should be in common. Bynkershoek is of a different opinion,—"Magis putarem utriusque culpa damno dato, nullam invicem esse actionem et suum quemque damnum ferre oportere." I should decide according to this opinion, even if the respondent were proved to be more at fault than appears to me to be evidenced, such gross negligence being manifested on the part of the schooner. If there were blame on the part of Captain Stone, it was culpa levissima; he might have passed at a greater distance, but he would have passed, as it appears to me, with perfect safety, if there had been only ordinary attention on board of the schooner. On consideration of all the circumstances and the law applicable to the subject, while I regret the loss which was occasioned, I do not perceive sufficient reason to charge it, in whole

or in part, on the respondent; and shall accordingly decree that the libel be dismissed, with costs.

NOTE. In the case of the Woodrop-Sims, Sir William Scott lays down the general rules, for apportioning the loss in cases of collision. He observes: "There are four possibilities under which an accident of this sort may occur. In the first place, it may happen without blame being imputable to either party; as where the loss is occasioned by a storm, or any other vis major. In that case, the misfortune must be borne by the party on whom it happens to light; the other not being responsible to him in any degree. Secondly, a misfortune of this kind may arise where both parties are to blame, where there has been a want of due diligence or of skill on both sides. In such a case the rule of law is that the loss must be apportioned between them, as having been occasioned by the fault of both of them. Thirdly, it may happen by the fault of the suffering party only; and then the rule is that the sufferer must bear his own burden. Lastly, it may have been the fault of the ship which ran the other down; and in this case the injured party would be entitled to an entire compensation from the other." 2 Dod. 83. The reason assigned for the rule that where both parties are to blame the loss must be apportioned between them is that, if each party were to bear his own injuries, large ships would make light of running down smaller vessels. Where the question depends upon technical skill, and experience in navigation, the court will avail themselves, at the application of the parties, of the assistance of a gentleman of nautical experience, who will be desired by the court to state the impression made upon him by the evidence, after hearing the arguments of counsel. This was done in the case of The Thames, 5 C. Rob. Adm. 345. See, also, The Catherine of Dover, 2 Hagg. Adm. 145. The rule of navigation is said to be that when ships are crossing each other in opposite directions, and there is the least doubt of their going clear, the ship on the starboard tack is to persevere in her course; while that on the larboard is to bear up, or keep more away from the wind. See The Shannon, Id. 173. When a ship is sailing on a wind, if the right side is to windward, she is on her starboard tack; if the left is to windward, she is on her larboard tack. In the case of a steam-boat, coming in an opposite direction to a common vessel, the rule seems to be that the steam-boat should always give way. See Jac. Sea Laws, 325, 327, where a concise notice is taken of the laws of various nations on this subject. See also, Dunlap's Practice and Curtis' digest on this subject, under the head of "Collision."